KUNIGUNDA SCHWEMMER, Respondent, v. SUPREME COUNCIL
CATHOLIC BENEVOLENT LEGION, Appellant.

First Department, May 2, 1919.

Appeal — consideration limited to points litigated at trial — insurance — action to recover balance claimed to be owing under beneficiary certificate in fraternal order — effect of increase in rates of assessments in order to create a reserve or emergency fund — deduction of amount charged against certificate upon settlement — surrender of certificate and receipt in full payment constituting prima facie evidence of accord and satisfaction — testimony by plaintiff to meet presumption — right of defendant to contradict said testimony.

An appellant should be confined on appeal to points litigated at the trial.

In an action to recover a balance claimed to be owing by the defendant, a domestic fraternal beneficiary order, on a beneficiary certificate issued to the plaintiff's husband, it appeared that the plaintiff had surrendered the benefit certificate, and had received a check from the defendant and had also executed and delivered to it a receipt, both to be " in full payment " of her claim under the certificate, and that thereafter she brought this action alleging that the defendant had illegally, wrongfully and fraudulently deducted a certain sum from the amount due her under the certificate. The defendant claimed the right to make the deduction by virtue of a change made in its laws subsequent to the issuance of the certificate in order to create a reserve or emergency fund under the requirements of section 205 of the Insurance Law. The decedent paid assessments according to the new increased rates.

Held, that the surrender of the certificate and the execution of the receipt by the plaintiff constituted prima facie evidence of an accord and satisfaction, but since the receipt was not in the form of a release under seal and the certificate had not been canceled, the plaintiff was entitled to meet the presumption.

Hence, her testimony to the effect that she was informed by the officers of the local lodge with whom the settlement was made that as soon as it became financially able the balance would be paid, was material and it was reversible error to refuse to permit the defendant to controvert it.

APPEAL by the defendant, Supreme Council Catholic Benevolent Legion, from a determination and order of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the Municipal Court of the

City of New York for the Third District, Borough of Manhattan, on the 10th day of April, 1918, affirming a judgment of the Municipal Court of the City of New York for said district.

The issues were tried in the Municipal·Court before a judge without a jury.

*Edward J. Connolly,* for the appellant.

*Andrew C. Linn,* for the respondent.

LAUGHLIN, J.:

This is an action to recover a balance claimed to be owing by the defendant, a domestic fraternal beneficiary order, on a beneficiary certificate which it issued to one Lorenz Schwemmer, a member of the order, on March 14, 1892. The membership of the defendant was divided into six grades, depending on the amount of· their benefit certificates, which varied and were classified according to the periodical contributions in the form of assessment which the member was desirous of making. The decedent was a third grade member, and his benefit certificate was for the payment of " a sum of money not exceeding two thousand dollars, according to the provisions of law governing said benefit fund," which amount the defendant agreed to pay out of its benefit fund to the plaintiff in this action, who was his wife and was so designated in the certificate, upon his death, if he should then be a member in good standing, provided he should not substitute another beneficiary or reduce the amount of the benefit under the rules governing disability benefits. The member died on the 14th day of April, 1917, in good standing in the order and without having reduced the amount of the benefit under the rules governing disability benefits, and· without having substituted another beneficiary. Section 8 of chapter 1 of the laws of the defendant removes any doubt that might exist, on account of the phraseology of the certificate, with respect to the amount to be paid; for it is therein provided that the sum of $2,000 shall be paid on the death of any third grade member. On the 22d day of May, 1917, the widow surrendered the benefit certificate to the local council to which her husband belonged, and received a check from the defendant for $1,490.96, on the

face of which it was recited to be *in full settlement* of the benefit certificate, and she indorsed and collected it; and under that date she signed and delivered to defendant a receipt for the payment of the money, in which it was recited that it was *in full payment* of her claim under the certificate which she surrendered, and she also signed a receipt, containing a like recital, indorsed on the surrendered certificate, under date of June 1, 1917. On July seventh thereafter she brought this action, as executrix of her husband's estate, alleging that the defendant agreed to pay, upon his death, to his family or dependents the sum of $2,000 and that it illegally and wrongfully and fraudulently deducted $510 therefrom, for which amount judgment was demanded. The record shows that at the commencement of the trial the title of the action was amended by consent on a stipulation so as to show that the action was brought by the widow, individually. Counsel for the appellant states in his points that the stipulation and consent were given after the submission, but before the decision of the case; and as tending to sustain that view he draws attention to the fact that at the close of the evidence he moved to dismiss on the ground, among others, that the plaintiff, as executrix, had no interest in the certificate. But it is not material whether the record is accurate as to the *time* of the amendment, for by stipulating and consenting that the action be prosecuted by the widow individually, with the certificate payable to her then in evidence, and with the defenses pleaded that it was payable to her and that there was an accord and satisfaction by the payment so made, the complaint must be deemed amended in conformity thereto, and, therefore, the appellant's contention now, which was not made before the decision, that the allegations of the complaint are that the money was payable to the family or dependents, is without merit. (See N. Y. City Mun. Ct. Code [Laws of 1915, chap. 279], § 93, subd. 2.) The record shows that the points litigated on the trial were the effect of the payment to the plaintiff and the receipts given by her, pleaded as an accord and satisfaction, and the right of the defendant to withhold the amount deducted. The appellant must, therefore, be confined to those points on the appeal.

It appears that the defendant conceded its liability on the

certificate to the extent of the payment made, and claimed the right to make the deduction by virtue of a change made in its laws as of the 1st day of September, 1904, and under the requirements of the State Superintendent of Insurance made pursuant to section 205 of the Insurance Law. (See Gen. Laws, chap. 38 [Laws of 1892, chap. 690], § 205. Amd. by Laws of 1906, chap. 326; now Consol. Laws, chap. 28 [Laws of 1909, chap. 33], § 205.) Long prior to 1904 it was found that the rates of assessments payable by members were insufficient to enable the defendant to meet its obligations under the benefit certificates; and it undertook to avert financial disaster by increasing the rates.

In the decedent's application for membership he promised and agreed to make punctual payments of all dues and assessments for which he might become liable, " and to conform in all respects to the laws, rules and usages now in force or which may hereafter be adopted by the Supreme Council Catholic Benevolent Legion." The application was expressly made a part of the contract evidenced by the benefit certificate, and said certificate was also expressly conditioned that the members should strictly comply with the laws, rules and regulations of the legion. By section 1 of article XIII of the defendant's constitution, the constitution and laws were subject to amendment to be made as therein provided, and by section 3 of said article any amendment superseded any then existing provision. In May, 1905, the defendant adopted a new rating based on its experience with the mortality of its membership down to that time. That re-rating was made retroactive, taking effect September 1, 1904. The decedent at that time was thirty-seven years of age, and thereafter he paid assessments, so far as appears, without protest, and the same were accepted and retained by defendant, according to the new and higher rate, applicable not to his age when he joined the order but to his age at the time this change in the law was put into effect, viz., one dollar and eighty cents, every two weeks. In other words, on and after September 1, 1904, he paid precisely the same rate of assessments as a new member of his age joining at or after that time. Section 3 of chapter 1 of the laws of the defendant, as revised at that time, contained provisions by which existing members on September 1, 1904, might continue

their membership, paying only the new rate of assessments, based on their respective ages at the time of their admission to membership. The scheme provided for in that regard was that the member should make a written application for such privilege, and pay into the benefit fund the amount of his reserve under his certificate as required by section 5 of said chapter as revised at the same time, or agree in writing that the amount of said reserve was to be charged against his certificate and to be deducted in any settlement with him or his beneficiaries, and agreed to pay with and in addition to his assessments, interest at the rate of four per cent upon the amount of said reserve. Such privilege was to become effective when the application therefor was approved by the supreme secretary, as therein provided. As I understand the record the decedent did not apply for that privilege but, as already stated, thereafter paid assessments according to the new increased rates, based on his age at the time the change took effect, in accordance with the general provisions of said section 3, applicable to all members, excepting those old members who applied for and obtained the privilege to which reference has been made. Said section 5 of chapter 1 provides as follows: " A reserve fund shall be accumulated and maintained upon the following basis, viz.: For each certificate in force on September 1, 1904, the net select and ultimate reserve thereon by the Catholic Benevolent Legion's Experience Table and interest at 4% per annum. Such reserve shall be sufficient by the aforesaid standards, together with the ultimate net premiums, fixed by the ages on September 1, 1904, for members on that date, if under age 70, and by age 70 if 70 or over, and fixed by ages last birthday upon admissions for members after September 1, 1904, to keep these rates level throughout life, and to assure the payment of all benefits. Each member must maintain to his credit a net balance at least equal to the reserve upon his certificate; any deficiency shall be a lien upon a member's insurance, accumulating at 4% interest, compounded annually, until the same is made good."

It appears that the defendant took no other action with respect to requiring those who were members on or before September 1, 1904, and continued members thereafter paying assessments based on their respective ages at the time this

change in the law took effect, as did the decedent, to pay in or otherwise to make up the reserve applicable to their certificates on the theory or claim that said section 5, as thus amended, was applicable to them and required that they make up a back reserve applicable to their certificates or that such a reserve was chargeable to their certificates, until February 1, 1917; and it also appears that until the 1st day of February, 1917, the defendant paid death claims on benefit certificates of those who were members on and prior to September 1, 1904, and continued to pay assessments on the same basis as did the decedent, without any deduction for the reserve fund and without in any manner enforcing the provisions of said section 5 as against them or their beneficiary certificates. It was conceded that general information was communicated by the defendant and its officers to the members by a periodical known as " The Supreme Council Catholic Benevolent Legion Monthly Bulletin." The issue thereof of February 1, 1917, which was prior to the death of the decedent, was introduced in evidence. It contained a resolution adopted by the supreme council of the defendant authorizing and directing the general officers of the defendant to put into effect for the first time the provisions of said section 5 as against old members who had paid on the same basis as new members. It does not appear how the amount of reserve required for a particular certificate or class of members is ascertainable or was ascertained and, therefore, it cannot be determined from this record whether the amount of reserve subsequently claimed by the defendant for the beneficiary certificate in question was or was not affected by the payment of such certificates during nearly thirteen years without deducting anything for the reserve fund. It is claimed, however, that the old members who after September 1, 1904, paid on the same basis as the new members were discriminated against to their prejudice from the fact that at this same time when such old members were required to make up the reserve with respect to their certificates or to have it become a lien and charge against their certificates, the supreme council of the defendant adopted a resolution setting aside from the general funds of the legion sufficient to cover the required reserves on certificates issued *since* September 1, 1904. That

action was doubtless taken, as will be seen presently, on the theory that the payments made by the members who joined *since* September 1, 1904, more than covered their respective proportions of the reserve which had been accumulated in the general fund from which, by this resolution, it was to be taken; but if so the respondent claims that the same was true with respect to the payments made by the old members at the rates applicable to their advanced ages and their respective shares of the reserve fund should likewise have been appropriated from the general fund, and if insufficient for that purpose, that the deficiency should have been met or obviated in some manner that would have operated alike upon the new members and the old members who had paid on the same basis, for, it is claimed, that having so paid they were in precisely the same position with respect to the new members as if they had surrendered their old memberships and certificates and joined anew, because from September 1, 1904, they paid the same amount for assessments as did those of the same age and class who joined subsequently. It is claimed that in those circumstances their assessments tended in precisely the same proportions to increase or create a surplus in the general fund and the new members could have no greater interest in the general fund than such old members. The front page of that issue of the bulletin contained a communication from the president of the defendant to the members of the legion with respect to the reserve required to be maintained by the members, and in it he reviewed the history of the movement to create the reserve and of the action of the defendant and of the State Superintendent of Insurance with respect thereto. He therein states that after said revision, which took effect September 1, 1904, many of the former members who were in the best of health dropped out and " the death rate at once increased among the poor risks remaining," and that those who remained, " on account of their heavy death rates, have not maintained their proper reserve; in other words they have not paid into the Legion enough money to pay their death claims and create the reserve fund the law requires; " and that the deficiency under the laws of the legion and the instructions of the Insurance Department " must now be charged against the certificates of such members." He then

added that he took great delight in announcing — and this is printed in large type and italicised — that all members who had joined since September, 1904, " have not only paid their full death claims, but have created a sum more than sufficient to maintain the reserve on their certificates, which will be duly credited to their individual accounts." He concluded by stating that the tables of rates adopted in 1904 " are therefore ample for all the members who have joined since that date and no charge is made against these members' certificates," and that said tables of rates afforded ample protection for all members thereafter joining. On said 1st day of February, 1917, defendant prepared a list of reserve deficiency liens against the certificates of members admitted prior to September 1, 1904, who had remained in the order and had paid assessments at the increased rates according to their respective ages on said date; such reserve deficiency liens were prepared on the theory that said section 5 was applicable to such certificates. The list so prepared showed a deficiency of $505, with interest from February 1, 1917, at four per cent per annum, against the certificate in question, which is the amount the defendant withheld. The plaintiff claims that if as so stated by the defendant's president, the amounts paid by the new members were more than sufficient to maintain the reserve required, the same must have been true as to the old members who paid on the same basis, and that, therefore, the deficiency assessments became, as between the old members and those subsequently admitted, penalties, for which there is no authority. This was not shown to be deductions from their certificates on the theory that they were not as good risks as those subsequently joining, for it does not appear that there was any medical examination of the old members, or that any was required; *all* old members, who did not apply for and obtain the privilege under said section 3, of paying according to their respective ages when they joined, provided section 5 applied to them, were placed in the same category with respect to the reserve deficiency liens, and we cannot infer that they were *all* poorer risks than those subsequently admitted. The evidence indicates that the action taken by the defendant, which it is claimed constitutes an unauthorized discrimination (See *Knights of Pythias* v. *Mims,* 241 U. S. 574), was taken on

the theory that the old members were, on September 1, 1904, indebted to the defendant, owing to the fact that the assessments theretofore paid by them, which were all that had been exacted of them, were insufficient to maintain a proper reserve to enable the defendant to meet its accruing obligations under its outstanding certificates; and the evidence also indicates, but not conclusively, that the reserve which has been declared liens upon and charged against the certificates has been to some extent augmented on the theory that there was thereafter a greater death rate among the old than among the new members. The point as to whether the defendant could lawfully increase the rates of assessments, as against the members who had joined before, is not presented for decision, because the decedent acquiesced in the action taken in that regard and paid all assessments in accordance therewith, and, therefore, no opinion is expressed as to the validity of the action of the defendant in increasing the rates of old members; but it may be observed that the authorities in this jurisdiction, where the defendant was incorporated, and which are, therefore, decisive on the point (*Royal Arcanum v. Green*, 237 U. S. 531, revg. *Green* v. *Royal Arcanum*, 206 N. Y. 591), appear to be opposed to the existence of such power (*Wright* v. *Knights of Maccabees*, 196 N. Y. 391; *Ayers* v. *Order of United Workmen*, 188 id. 280; *Stewart* v. *Thorburn*, 171 App. Div. 258; *Weber* v. *Supreme Tent of K. of M.*, 172 N. Y. 490), although in other jurisdictions it has been held that this may be done. (*Reynolds* v. *Supreme Council of the Royal Arcanum*, 192 Mass. 150; *Knights of Pythias* v. *Mims*, 241 U. S. 574; *Knights of Pythias* v. *Smyth*, 245 id. 594.) But whether the effect of the decedent's continuing as a member, in the manner stated, was to give him the same rights as if he had joined the order *de novo*, on the theory that a medical examination, if required, was, in effect, waived, on September 1, 1904, or whether he should, thereby, be deemed to have acquiesced in and consented to a reserve deficiency charge against his certificate, and whether the charge made was warranted, should not be decided without evidence clearly presenting the *basis* and theory upon which such alleged discrimination between old and new members was made, and upon which such charges and liens were determined and computed. If it were necessary now to decide

the merits of the defense whereby the defendant attempts to justify the deduction made from the certificate, it is very doubtful whether the record would be sufficient for that purpose. The defendant, however, makes another point upon which I think there should be a reversal. The fair inference presumptively is, from the surrender of the certificate by the plaintiff and the execution of the receipts by her to the effect that she accepted the payment made in full settlement and payment of any claim she had under the certificate, that the defendant would not make the payment unless she so surrendered the certificate, and executed the receipts, and if the payment was made under those circumstances, although it was only of the amount for which the defendant conceded its liability, it constituted an accord and satisfaction. (*Simons v. American Legion of Honor*, 178 N. Y. 263.)

Counsel for the plaintiff apparently appreciated this in pleading that the deduction was illegally, wrongfully and fraudulently made, and by showing by his client that she was informed by the officers of the local lodge, with whom the settlement was made, at the time of the settlement that as soon as the lodge became financially able the balance would be paid, and that for the time being they needed the money for the war, and she also testified that " they gave me something how much I will get yet," but there is no further evidence with respect to the " something " to which she referred. The learned trial court was evidently of opinion that the evidence was immaterial, for evidence offered by the defendant to contradict the plaintiff's testimony on this point was excluded, and it duly excepted. The surrender of the certificate and the receipts constituted *prima facie* evidence of an accord and satisfaction within *Simons v. American Legion of Honor* (*supra*), but inasmuch as the receipts were not in the form of releases under seal and the certificate had not been canceled the plaintiff was at liberty to meet the presumption as she did. Her testimony was, therefore, material, and the defendant should have been permitted to have controverted it. ( *Komp v. Raymond*, 175 N. Y. 102; *Simons v. American Legion of Honor, supra.*) If the defendant's evidence on that point had been received it might have presented a question of fact as to whether the plaintiff surrendered the certificate, executed

the receipts and accepted the payment unconditionally, or whether she was given to understand that it was only a partial payment and that the balance would be paid later on.

It follows, therefore, that the determination of the Appellate Term and the judgment of the Municipal Court should be reversed and a new trial granted, with costs to appellant in all courts to abide the event.

CLARKE, P. J., PAGE and MERRELL, JJ., concurred.

Determination and judgment reversed and new trial ordered, with costs to appellant in all courts to abide event.