## SUPREME COUNCIL, CATHOLIC BENEVOLENT LEGION, v. GALLERY.*

(Circuit Court of Appeals, Seventh Circuit. October 7, 1921.. Rehearing Denied November 18, 1921.)

### No. 2811.

1. **Pleading ⊂⊃360(4)—Entry on striking affidavit of defense for amount therein admitted leaving suit to proceed as to balance held authorized.**

Where an affidavit of merits, asserting that there was a defense to the entire action, but admitting that there was due plaintiff $1,079.91, was stricken from the files, with leave to file a new affidavit, and judgment thereupon given for the amount admitted, with leave to file instanter an affidavit of defense to the entire action, excepting such amount, which was done, such proceedings were authorized by Practice Act Ill., § 55, though at the precise instant of the entry of the judgment the affidavit of defense had been stricken.

2. **Pleading ⊂⊃426(1)—Objection to entry of judgment for amount admitted, because no affidavit of defense then on file, waived by proceeding without objection.**

An objection to the entry of judgment for an amount admitted by defendant to be due under Practice Act Ill. § 55, because the affidavit of merits had been stricken and another not filed when the judgment was entered, was waived when not suggested in the subsequent proceedings.

3. **Courts ⊂⊃365—Right to charge amount against certificate governed by decisions of state where benefit society chartered.**

The decisions of the courts of the state in which a benefit society was chartered as to its right to charge against certificates a deficiency in the reserve provided by its constitution must be given effect by federal court.

In Error to the District Court of United States for the Eastern Division of the Northern District of Illinois.

Action by Mary J. Gallery against the Supreme Council, Catholic Benevolent Legion. Verdict for plaintiff, and defendant brings error. Affirmed.

The action was upon a benefit certificate issued in 1884 to Wm. J. Onahan by plaintiff in error, a fraternal benefit society chartered by the state of New York. The certificate provides for payment of $5,000 maximum to the beneficiary named upon death of the member. In 1904 the Legion found itself quite deeply in arrears for accrued benefits, and it set about to change its plan, not only to meet the deficiency, but to accumulate a reserve fund. Constitutional amendments were adopted whereby rates were radically increased, so that in Onahan's case his payments, which for 20 years theretofore had averaged a little more than $100 annually, thereafter amounted to nearly $450 a year. In lieu of this increase it was provided that members desiring to continue paying their old rates might do so by agreeing to have charged against the face of the certificate the difference between the amount which the actuaries had computed the value of the insurance to have been. Had Onahan accepted this option, he would have continued paying the old rate, but would have reduced the face of his certificate between one-half and one-third. A few

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 257 U. S. —, 42 Sup. Ct. 272, 66 L. Ed. —.

members chose this plan, but Onahan, with most of the others, paid the increased rate. These were given the privilege of paying part of it in cash, the rest to remain a charge against the certificate; the member to pay 4 per cent. annual interest on amounts so charged. In 1908 the charging privilege was withdrawn, and thereafter the full amount was paid in cash. The total amount thus charged against Onahan's certificate was $814, on which he paid 4 per cent. interest annually until his death. Among the amendments adopted to the constitution in 1904 was

"Section 5. A reserve shall be accumulated and maintained upon the following basis, viz.: For each certificate in force on September 1, 1904, the net select and ultimate reserve thereon by the Catholic Benevolent Legion's experience table and interest at 4 per cent. per annum. Such reserves shall be sufficient by the aforesaid standards, together with the ultimate net premiums, fixed by the ages on September 1, 1904, for members on that date, if under age 70, and by age 70, if aged 70 or over, and fixed by ages last birthday upon admission for members admitted after September 1, 1904, to keep these rates level throughout life, and to assure the payment of all benefits. Each member must maintain to his credit a net balance at least equal to the reserve upon his certificate; any deficiency shall be a lien upon a member's insurance, accumulating at 4 per cent. interest, compounded annually, until the same is made good."

Although the largely increased payments served to discharge the deficit existing in 1904 and to raise a very considerable benefit fund, it was not deemed that the reserve was sufficient according to the law of New York, and in 1917 it was for the first time undertaken to charge certificates with the estimated amount of the deficiency between the amount paid in and the value of the insurance to that time. This was done by resolution of the trustees, under supposed authority of section 5 of the amended constitution, and under direction of the state insurance department; and, assuming that section 5 was applicable only to certificates issued prior to 1904, the charge was made only against certificates issued prior to that year, and no charge whatever was made against the others. Onahan received notice from the Legion that pursuant to this action his certificate was charged with $2,877. His payments remained the same. He replied, protesting against this charge, and stating that payment of further assessments is not to be regarded as acquiescence therein. He continued paying the full rates and interest on the charged part of previous assessments, until his death, which occurred the following year.

The affidavit of merits filed with the plea of defendant stated that it had a defense to the entire action, but admitted there was due the plaintiff $1,079.91. On motion of the plaintiff the affidavit was stricken from the files, with leave to file a new affidavit, and judgment was given for the plaintiff in the action for $1,079.91 and interest, and at the same time leave was granted defendant to file instanter its affidavit of defense to the entire action, excepting $1,079.91 thereof, which was done. This judgment was satisfied, and thereafter by written stipulation jury was waived, the cause tried before the court, and judgment was rendered against the Legion for $3,106.03. The facts leading up to the attempted charging of such certificates are more fully stated in the opinion of the New York Appellate Division in the case of Schwemmer v. Supreme Council Catholic Benevolent Legion, 187 App. Div. 673, 176 N. Y. Supp. 139.

Irwin I. Livingston, of Chicago, Ill., for plaintiff in error.

Daniel V. Gallery, of Chicago, Ill., for defendant in error.

Before BAKER and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1, 2] The contention is made that the entering of the judgment for $1,079.91 and interest terminated the controversy, and that no subsequent judgment could be rendered in the action. The position is not tenable. Section 55 of the Illinois Practice Act (Hurd's Rev. St. 1919,

c. 110) provides for entering judgment for such amount, if any, of a plaintiff's claim as to which no defense is shown by the affidavit of defense, leaving the suit thenceforth to proceed as to the part of the plaintiff's demand in dispute. While at the precise instant of the entry of the judgment the affidavit of defense had been stricken, it is apparent that the contemporaneous leave to file amended affidavit, followed on same date by actual filing of it, is quite sufficient to characterize the entire proceeding as one falling within the statutory provision. If the point had been raised at the time, and had been considered good, the order for judgment would undoubtedly have been vacated, and another judgment entered upon the filing of amended affidavit, in which defense to the entire action was not asserted, but only as to that portion of it beyond the $1,079.91. Throughout the proceedings subsequent to this judgment no suggestion of this contention appears, and there was in any case a waiver of it.

Considerable discussion is presented by the briefs as to the right of fraternal benefit societies organized in New York to increase their rates. This member definitely assented to the increase, and paid it from 1904 to his death, and so that question does not here arise.

[3] The controlling proposition is as to the right of the Legion to charge these certificates with the reserve, as was for the first time undertaken in 1917. This proposition is one which is governed by the laws of New York, under which the society was chartered, and if the courts of that state have passed upon the question here involved, so that we are enabled to say what is the law of New York thereon, we must give effect thereto. Royal Arcanum v. Green, 237 U. S. 531, 35 Sup. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771. It appears that a like certificate of the society was in issue in the case of Schwemmer v. Supreme Council, Catholic Benevolent Legion, 187 App. Div. 673, 176 N. Y. Supp. 139, and from the statement and opinion there the facts are quite the same as those here. That court held that, unless certain further facts appear (which are likewise absent in the case at bar), the action taken in 1917, to charge the old certificates only, was discriminatory and void, and reversed and remanded for new trial a judgment below in favor of the Legion. We find no further proceedings in that case. This was followed within a few months by the case of Kennedy v. Supreme Council, Catholic Benevolent Legion, 177 N. Y. Supp. 268, 188 App. Div. 613, wherein the Appellate Division considered a controversy in which there, as here, was involved the question of the right of the Legion to so charge one of these same old certificates. In the interest of brevity we will not quote from the opinion. Suffice to say the court held that the Legion had no power to charge the certificate as was undertaken, and it affirmed judgment for full amount of the certificate.

We can find nothing in the case at bar to distinguish it from the Kennedy Case. Indeed, the actuarial evidence offered in the case at bar was by stipulation read from the transcript of the record in the Kennedy Case. Upon appeal by the Legion to the New York Court of Appeals, that court, on May 1, 1921, affirmed with costs the judgment in the Kennedy Case, filing no opinion. The case of Donaldson v.

Supreme Council, Catholic Benevolent Legion, 180 N. Y. Supp. 598, was an action in the New York Supreme Court, based on another one of these old certificates; the primary question being the right of the Legion to charge such reserve against it. The court in its opinion cited the Kennedy Case as authority for its conclusion against the right, and gave judgment in favor of the plaintiff in the action. We find no reported decisions of New York courts which conflict with those referred to, and in view of them we conclude it is the law of New York that certificates such as that here in issue may not be charged as was undertaken in 1917 to do.

The judgment of the District Court is affirmed.