Lawrence Everett, Respondent, v. The Supreme Council, Catholic Benevolent Legion, Appellant.

Second Department, November 17, 1922.

Insurance — mutual benefit association — action to recover on death benefit certificate — certificate provided that member would conform to all laws of defendant in force or thereafter adopted — no provision in certificate that assessment might be increased — member accepted provision whereby forty-five per cent of assessments was charged to certificate — reissuance of certificate to change beneficiary not new contract — member not bound to pay increase in assessments made after certificate issued — part of increased assessment not paid by member not deductible from face of certificate — payment by member of fifty-five per cent of increased assessment not estoppel — notice of passage of by-law increasing assessment was not received by member.

A member of a mutual benefit association is not bound to pay any increase in assessments pursuant to an amendment of the constitution and by-laws, made after the issuance of his certificate, where there is no provision in the certificate to the effect that he will do so and the only provision relating to changes in the constitution or by-laws of the association is that the member agrees to conform in all respects to the laws, rules and usages in force when the certificate was issued or which might thereafter be adopted.

The reissuance of a certificate for the sole purpose of changing the beneficiary does not constitute a new contract nor compel the member, by reason thereof, to pay said increased assessment.

The fact that the member who was permitted by the rules of the association to pay fifty-five per cent of his assessments and have the remainder charged against the certificate, paid fifty-five per cent of the increased amount of the assessment, does not estop the beneficiary from contending that the association had no right to charge forty-five per cent of said increase against the policy.

The finding of the jury that the member never received any notice of the passage of the by-law creating a lien or charge upon the amount of the death benefit ·is supported by the evidence.

Manning, J., dissents.

Appeal by the defendant, The Supreme Council, Catholic Benevolent Legion, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 25th day of February, 1922, upon the decision of the court rendered after a trial at the Kings Trial Term, a jury having been waived.

*Edward J. Connolly* [*Harry J. Frey* with him on the brief], for the appellant.

*Joseph K. Ellenbogen,* for the respondent.

Kelby, J.:

The defendant is a fraternal assessment society, organized under an act of the State of New York, entitled "An act concerning

charitable, benevolent and beneficiary associations, societies and corporations," passed May 12, 1881, as chapter 256 of the Laws of 1881. It is conducted upon the lodge or subordinate council system, operating for the equal and mutual benefit of all of its members and their beneficiaries through a system of local or subordinate councils and having a representative form of government known as The Supreme Council, Catholic Benevolent Legion.

Among the objects of its organization are to give moral and material aid to its members and their dependents, and the establishment of a benefit fund from which, upon the death of a member, a sum not exceeding $5,000 may be paid to his legally designated beneficiary or beneficiaries.

Pursuant to that purpose, defendant has created a benefit fund by assessments collected from its members.

On the 31st of May, 1886, the father of the plaintiff herein made written application for membership in the defendant and in his application directed that the benefit to which his beneficiary might be entitled be paid upon his death to Margaret Everett, his wife; and among other things stated in said application: " I further hereby promise and agree to make punctual payment of all dues and assessments for which I may become liable and to conform in all respects to the laws, rules and usages now in force or which may hereafter be adopted by The Supreme Council Catholic Benevolent Legion." Thereafter, on the 7th day of July, 1886, and upon said application, plaintiff's father was duly elected a member of the defendant and duly admitted to membership in a subordinate council of defendant known as St. Michael's Council No. 28, located in Brooklyn, N. Y. At the time and as part of the said election and admission to membership, the said applicant signed an agreement as follows: " In the presence of these witnesses I do, of my own free will and accord, faithfully promise that I will strictly comply with all the laws, rules and usages of The Catholic Benevolent Legion as established by its Supreme Council. That I will hold allegiance to the Supreme Council and be loyal thereto as the supreme authority of the entire Legion. That I will obey all orders emanating from the Supreme or State Councils or from the subordinate council of which I am a member, so long as they do not conflict with those of the Supreme Council or with any of my privileges as a citizen or my duties as a Roman Catholic."

On the 7th day of July, 1886, the defendant executed and delivered to the said member, Pierce Everett, also known as Pierce Everard, a certificate of membership in writing, whereby it was certified that Pierce Everett had been accepted as a fourth-grade

member; that he was a fourth-grade contributor to the benefit fund of the legion and that the certificate was issued upon condition that the statements contained in his application for membership, and medical examination, were true and that he would strictly comply with the laws, rules and regulations of the legion. Then appears the following: " These conditions being complied with, The Supreme Council, Catholic Benevolent Legion, hereby agrees to pay out of its Benefit Fund to Margaret Everard, wife, a sum of money not exceeding three thousand dollars, according to the provisions of law governing said fund upon the death of said member in good standing, provided he shall not have substituted another beneficiary or reduced the amount of said Benefit under the rules governing Disability Benefits." This certificate was reissued under date of February 21, 1905, so as to change the beneficiary (his wife having died) to Lawrence Everett, the plaintiff, and son of the member.

The constitution and by-laws of the defendant at the time when the said Pierce Everett became a beneficiary member thereof duly provided that $3,000 cash be paid on the death of every fourth-grade member. Pierce Everett accepted this certificate and this reissue and thereafter duly complied with all the requirements of the constitution, laws and regulations of the defendant. On the 5th day of October, 1920, the said Pierce Everett died, a member in good standing of the defendant. After the death of the member, due notice and proofs of death of the said member were given to the defendant, and payment of the $3,000 alleged to be due under the said certificate was demanded. The defendant refused to pay the same and tendered to the plaintiff a check for $951.45, the amount which the defendant admitted was due. It appears that under another provision of the by-laws existing at the time Pierce Everett entered as a member, he exercised a privilege of paying fifty-five per cent of each assessment and having forty-five per cent charged against his benefit certificate with interest, and on these part payments there were due $371.84. The plaintiff admits the justness of this deduction. The defendant claims a further reduction of $1,676.71 as an alleged lien created by a by-law passed by the defendant subsequent to the by-law that was in effect at the time of Pierce Everett's admission into the society.

In May, 1900, the constitution and laws of the defendant were amended, and Pierce Everett, who had previously paid two dollars and sixteen cents bi-weekly for each assessment, was thereafter required to pay three dollars and fifteen cents bi-weekly for each assessment.

In 1904 the defendant again amended its constitution and laws

and re-rated the members according to their respective ages on September 1, 1904, and upon the ascertained mortality of the membership, and thereafter Pierce Everett paid seven dollars and eighty-six cents each assessment.

A further amendment at the same time last above mentioned provided that the share in any deficiency found upon valuation should be charged against the certificate, and accumulating at four per cent interest, unless paid in cash, and should be a lien upon the proceeds of said certificate in any settlement with the member or beneficiary. Chapter 1, section 5, of the laws of the defendant, as thus amended, reads as follows:

" A reserve shall be accumulated and maintained upon the following basis, viz: For each Certificate in force on September 1, 1904, the net select and ultimate reserve thereon by the Catholic Benevolent Legion's Experience Table and interest at four per cent per annum. Such reserves shall be sufficient by the aforesaid standards, together with the ultimate net premiums, fixed by the ages on September 1, 1904, for members on that date, if under 70, and by age 70 if aged 70 or over, and fixed by ages last birthday upon admission for members admitted after September 1, 1904, to keep these rates level throughout life, and to assure the payment of all benefits. Each member must maintain to his credit a net balance at least equal to the reserve upon his certificate; any deficiency shall be a lien upon a member's insurance, accumulating at four per cent interest, compounded annually, until the same is made good."

Pierce Everett paid the new and increased rates from the assessment falling due in the month of September, 1904, to and including the assessment at the time of his death. Although the amendment to the constitution and laws of the defendant (Chap. 1, § 5) of September 1, 1904, above referred to, was passed on that date, no attempt was made to enforce a lien on any certificate until February 1, 1917. On the latter date the lien for the deficiency in reserve was charged as of that date against the certificates of members who joined the legion prior to September 1, 1904, because, the defendant contended, the reserve on such certificates had not been maintained. No lien was charged against the certificates of members admitted after September 1, 1904, for the alleged reason that the reserves had been maintained by such members.

The defendant's only source of income or revenue from which it could pay or undertake to pay any of its obligations for death benefits, was the assessments which were collected from its members. The legal question presented is, can the obligation recited

in the certificate and under the by-laws, to pay Pierce Everett's beneficiary the sum of $3,000, be modified by the enactment of a subsequent by-law creating a reserve and casting a charge or lien upon the $3,000 agreed to be paid pursuant to the terms of the certificate and by-law?

At the time Pierce Everett joined the defendant, article III of the constitution of the defendant granted a general power to amend by-laws upon a three-fourths vote of the members present at the regular meeting of the supreme council or at a special meeting called for the purpose.

When Pierce Everett surrendered his certificate in 1913 to have the beneficiary changed and to have it reissued, a provision not in the original certificate is found in the so-called reissued certificate, as follows:

" The charter, application for membership, medical examination, constitution and laws of the society shall constitute the contract between the member and the society, and any changes, additions, or amendments to the charter of this society, constitution or laws, duly made or enforced subsequent to the issuance of the benefit certificate shall bind the member and his beneficiary and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were enforced at the time of the application for membership, and shall be set forth in the Benefit Certificate." ·

The certificate issued in 1886 and the constitution and by-laws in existence at that time provided unconditionally for the absolute payment of $3,000 to the beneficiary of the certificate. When Pierce Everett surrendered his original certificate, it was done for the sole purpose of having the same reissued with a changed beneficiary. The case of *Beach* v. *Supreme Tent K. of M.* (177 N. Y. 100), which was a suit to recover on a certificate of membership issued by a fraternal or mutual benefit association, held that a by-law passed after the issuance of the certificate did not affect the liability of the defendant under its original promise to pay contained in the certificate, and the court in that case quoted with approval the opinion in *Langan* v. *Supreme Council American Legion of Honor* (174 N. Y. 266) as follows: " It was beyond the power of the defendant to affect the obligation expressed in the certificate, without the consent of its holder;" and Judge CULLEN in the *Beach Case* (*supra*) said: " It is quite easy for fraternal organizations, such as the defendant, if they deem the provisions for benefits to their members tentative only and desire to have them subject to such modification as the business of the orders may

require, to express that in the certificate. So, * * * if the certificate had provided that the payments therein specified should be subject to such modification as to amount, terms and conditions of payment and contingencies in which the same were payable as the endowment laws of the order from time to time might provide, the amendments would be applicable to existing members. But I think that nothing less explicit than this appearing in the certificate itself should be effectual for such a purpose. Fairness to persons joining the order required such plain dealing." In the case of *Green* v. *Royal Arcanum* (206 N. Y. 591) it was held that the membership contract in a mutual benefit association in which the member agrees " to conform in all respects to the laws, rules and usages of the order now in force or which may hereafter be adopted by the same," does not authorize a subsequent amendment of the by-laws without the member's consent, if the effect of such amendment is to increase the rate of assessment or to reduce the amount of the benefit as fixed by the contract, although the certificate issued was upon condition " that the said member complies, in the future, with the laws, rules and regulations now governing the said Council and Fund, or that may hereafter be enacted by the Supreme Council to govern said Council and Fund." That case was later reversed by the Supreme Court of the United States for the sole reason that the defendant was a Massachusetts corporation and that by the statutory law of that State the defendants had power to change and amend their rates of assessment. (237 U. S. 531.) In the case of *Kennedy* v. *Supreme Council C. B. L.* (188 App. Div. 613; affd., without opinion, 231 N. Y. 582) it was held that the assertion by this very defendant that it could deduct a charge for maintenance of reserve from the face of the certificate at the time of the death of the member could not be sustained under the very by-law under review in this case. In that case, as in this, there was a reissuance of the certificate, changing the beneficiary, and the court there pointed out that that did not constitute a new contract. (So, also, to the same effect see *Schwemmer* v. *Supreme Council C. B. L.*, 187 App. Div. 673.) The court in that case reversed the judgment solely on the ground that there had been an accord and satisfaction by the acceptance of a check, and the surrender of the certificate and also the signing of a receipt by the beneficiary in full payment was made in full settlement under any claim that the beneficiary had under the certificate. It is urged by the appellant that the affirmance in the Court of Appeals in the case of *Kennedy* v. *Supreme Council C. B. L.* (*supra*) was really upon the ground that that court had no jurisdiction. If that were the case, the decision of the court would·

have been a dismissal of the appeal, and not an affirmance of the judgment.

Nor can it be said that Pierce Everett or his beneficiary was estopped by paying the increased amount of the assessment. It can fairly be said that the increase in the amount of the assessment paid by a member was for the purpose of paying all death benefits in full, and this is the more readily believed because the defendant continued to pay all its members in full and the beneficiaries of all deceased members, up to February, 1917 — a period of almost thirteen years after it had passed the by-law creating a lien or charge upon the amount of the death benefit.

Whatever may be the rule in other jurisdictions, it seems clear that the rule of law announced by the decisions above quoted is still the law in the State of New York. In the case of *McClement v. Order of Foresters* (222 N. Y. 470) the Court of Appeals quoted with approval several of the cases above cited, and held that in that case it would have been beyond the power of the defendant to charge an extraordinary assessment of $520 against the certificate of insurance were it not for the fact that the laws of Canada, under which the defendant in that case was organized and from which it derived its powers, expressly gave it that power. It seems clear from the certificate and the by-law in existence at the date of the issuance of the certificate, that there was an express promise to pay $3,000; and that plaintiff's father had a vested right to compel the defendant to pay such sum, which could not be defeated by legislation of the defendant nor by the State of New York.

In addition to the foregoing grounds for affirmance of the judgment appealed from, the trial judge held as a fact that Pierce Everett never received any notice of the passage of the by-law nor any notice as to the creation of the lien or charge upon the face of the certificate. This finding, we think, is supported by the evidence.

The judgment appealed from should, therefore, be affirmed, with costs.

JAYCOX and YOUNG, JJ., concur; BLACKMAR, P. J., concurs in separate opinion; MANNING, J., dissents.

BLACKMAR, P. J. (concurring):

I concur. The certificate is a part of the contract. Its express stipulations cannot be altered by an amendment to the by-laws unless the power so to alter them be expressly reserved on the face of the certificate, and the certificate issued to deceased in 1886 contained no such reservation. The contract is found in

the chartered powers of the corporation, the constitution and by-laws of the corporation, and the certificate issued to the individual members. Although the defendant is a mutual benefit organization, in which every member is both insurer and insured, in which the obligations and rights of the members are concurrent, and in which the constitution and by-laws are, by the very law of their being, like all laws, subject to change, yet as to that part of the contract expressed in the certificate the corporation and the members deal at arm's length. The stipulations in the certificate are personal to the holders. The certificate is issued by virtue of the by-laws, but it exists independently of them, and, in the absence of an express reserved power, cannot be altered by amendment to the by-laws. If there were no independent promise contained in the certificate and the contract was expressed in the by-laws only, then I do not doubt that the by-laws might be amended, and the contract thereby changed, by the reserved power which always exists to amend by-laws. Of course, this is subject to the rule of reason, as in *Parish* v. *New York Produce Exchange* (169 N. Y. 34) it was held that a fund raised and held in trust for a particular purpose could not be diverted to another purpose. But the rules of assessment and the amount of the benefits could be changed with the reasonable purpose of securing solvency and treating all members alike by preventing the payment in full of the benefits that first fall in and defaulting in the others.

But when certificates are issued to individuals, the promises contained therein are vested interests in the holders. As to these promises the corporation has bound itself whether they lead to insolvency or not.

Let us now consider the wording of the certificate issued to decedent in 1886. The defendant thereby agreed to pay to the beneficiary " a sum of money not exceeding three thousand dollars, according to the provisions of law governing said fund upon the death of said member in good standing." There is not a word of any reserved rights to change the amount. The obligation is to pay the benefit not exceeding $3,000 according to the provisions of law governing said fund. At that time the provisions in the constitution and by-laws, which were referred to by the words " provisions of law," were that $3,000 should be paid. Therefore, the promise was to pay $3,000. As to such a certificate Judge CULLEN in *Beach* v. *Supreme Tent K. of M.* (177 N. Y. 100), at page 104, said: " It is to pay one-half of the certificate on disability ' as provided in the laws of the order,' not as may be provided in the laws of the order." So in this case the promise was to pay a sum of money not exceeding $3,000 according to the

provisions of law governing such fund. This meant the then existing provisions of law, and they provided for the payment of $3,000. This, then, was the promise contained in the certificate, and this promise is beyond the reach of any amendment to the laws of the order.

I concur on the sole ground that a promise contained in a certificate or other contract made by a mutual benefit association with and personal to an individual member, may not be altered by amendment to the constitution or by-laws of the organization unless such power be reserved on the face of the certificate by language so plainly expressing the extent of 'the reservation that the certificate holder, on joining the association, may, by reading his certificate, understand the relations into which he is coming.

Judgment affirmed, with costs.