# SUPREME LODGE, KNIGHTS OF PYTHIAS *v.* MIMS.

## ERROR TO THE COURT OF CIVIL APPEALS FOR THE FIFTH SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 345. Argued May 1, 2, 1916.—Decided June 12, 1916.

Where the case necessarily turns on the construction of act of Congress, which is the charter of one of the parties, a Federal question is presented, and this court has jurisdiction under § 237, Jud.

Code, if the construction contended for by plaintiff in error was rejected by the court below.

Under § 4 of the Act of June 29, 1894, constituting the charter of the Knights of Pythias, giving a right to have by-laws and to amend the same, the corporation had power to raise rates for life benefits to such point as was necessary for it to go, and a member continuing to remain therein was obligated to pay the assessments fixed by the laws as amended.

THE facts, which involve the construction of the charter granted by act of Congress to the Knights of Pythias and the rights and obligations of a holder of its insurance certificates, are stated in the opinion.

*Mr. M. M. Crane,* with whom *Mr. H. P. Brown, Mr. Edwin Crane, Mr. James P. Goodrich, Mr. Ward H. Watson, Mr. James E. Watson* and *Mr. Sol. H. Esarey* were on the brief, for plaintiff in error.

*Mr. Lawrence C. McBride,* with whom *Mr. Joseph E. Cockrell, Mr. Thomas F. West* and *Mr. Edward Gray* were on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit against a corporation chartered by Congress on June 29, 1894 (c. 119; 28 Stat. 96), to recover all sums paid by the plaintiff, the defendant in error, to the defendant and its predecessors; the ground alleged being that the defendant, the plaintiff in error, has demanded monthly dues in excess of its rights and thereby has entitled the plaintiff to recover all that he had paid, with interest.

The facts are as follows: The plaintiff originally took out two certificates of insurance from an earlier corporation of the same name, the charter of which expired on

August 5, 1890. In May, 1885, he surrendered these certificates and took out a new one in what was called the Fourth Class by which, in consideration of his original declarations and representations and of the payment "of all monthly payments as required, and the full compliance with all the laws governing this Rank, now in force, or that may hereafter be enacted and shall be in good standing under said laws" the sum of $3,000 was to be paid to the plaintiff's wife, or such other beneficiary as he might direct in proper form, upon notice and proof of death and good standing at the time; provided, as hereafter stated. It was further stipulated that any violation of the conditions mentioned or the requirements of the laws governing this Rank should avoid all claims. By the certificate of incorporation the corporation had power 'to alter and amend its Constitution and By-laws at will'; the laws of 1880, then in force, provided that 'these laws [regulating assessments *inter alia*,] may be altered or amended at any regular session of the Supreme Lodge K. of P.'; and by his original application the plaintiff agreed to conform to the laws and regulations of the order then in force or that might thereafter be enacted, or submit to the penalties therein contained.

The plaintiff contends that his contract took him out of these reiterated provisions for possible change; and his ground is that by Article V, § 4, of the laws of 1884, creating the Fourth Class, the endowment fund for the payment of benefits in that class was to be derived from monthly payments from each member for each one thousand dollars of endowment, to be graded according to the age of the member at the time of making application, and his expectancy of life, the age to be taken at the nearest birthday, "Said monthly payments shall be based upon the average expectancy of life of the applicant, and shall continue the same so long as his membership continues." A table appended gave the rate for the different ages from

21 to 60. At that time members were transferred to the Fourth Class at the original entry age, which in the plaintiff's case was 42. These same laws of 1884 repeated the former provision as to amendment by the Supreme Lodge, now requiring a two-thirds vote. The recension of 1886 repeated the last-mentioned provision and set forth a form of application by which the applicant agreed not only, as heretofore, that he, but also that 'this contract shall be controlled' by the laws then in force or that might be enacted thereafter. The power to alter was applied in 1888 to the payments to be made by the Fourth Class. The Board of Control was ordered to rerate members transferred to the Fourth Class as the plaintiff was, so that thereafter they should pay as of the age at which they were transferred instead of that at which they first became members. Thereafter the plaintiff paid as of the age of 48.

After the charter expired in 1890 the business was kept going under the same name by a voluntary association, the plaintiff paying his assessments as before, until on June 29, 1894, the act of Congress mentioned incorporated certain persons named, 'officers and members of the Supreme Lodge, Knights of Pythias' by the name of 'The Supreme Lodge Knights of Pythias' and authorized them to use the powers 'incidental to fraternal and benevolent corporations within the District of Columbia.' By the third section of the charter·"all claims, accounts, debts, things in action or other matters of business of whatever nature now existing for or against the present Supreme Lodge Knights of Pythias, mentioned in § 1 of this act, shall survive and succeed to and against the body corporate and politic hereby created; provided that nothing contained herein shall be construed to extend the operation of any law which provides for the extinguishing of claims or contracts by limitations of time." This is the main ground upon which the defendant is

sought to be charged with the certificate issued by the
former corporation. By § 4 "said corporation shall have
a constitution, and shall have power to amend the same at
pleasure; *provided,* that such constitution or amendments
thereof do not conflict with the laws of the United States
or of any State." Amendments to the laws of the associa-
tion were adopted this same year, 1894, by one of which the
existing rates were retained and it was provided that each
member of the endowment rank should continue to pay
the same amount each month thereafter so long as he
remained a member, 'unless otherwise provided for by
the Supreme Lodge or Board of Control of the endow-
ment rank.' A similar provision was made in 1900, but
the rate for the age of 48 was made $2.45 or $7.35 for the
$3,000 in the certificate. The plaintiff paid the rates
as established from time to time.

The split came in 1910. In that year the corporation
passed a law providing for a rerating of every member
of the Fourth Class on January 11, 1911, in accordance
with his attained age and occupation, under which the
plaintiff's monthly payment would be raised to $34.80,
unless he accepted one of several options offered to him.
It should be added that his occupation played no part as
it was not ranked as hazardous. He was notified, but
declined to pay or otherwise accede to the change. On
January 20, 1911, he tendered $22.05 for the months of
January, February and March of that year, the tender was
refused and in May this suit was begun. The Court of
Civil Appeals affirmed a judgment for the plaintiff on a
verdict directed by the trial court, modifying it so far as
to confine the recovery to payments made since the issue
of the certificate of 1885, with interest. An application
to the Supreme Court for a writ of error was refused.

There is a motion to dismiss but as the case necessarily
will turn on the construction of the present charter, an
act of Congress, and the defendant justifies under it, the

motion is denied. *Creswill* v. *Knights of Pythias*, 225 U. S. 246, 258. There is no ground for treating the plaintiff as not having come into the new company by virtue of § 3. That section provided for his doing so and when he was treated and acted as a member the presumption is conclusive that he did so in pursuance of the law that authorized it.

We assume without argument that by § 3 of the charter and his assent thereto the plaintiff became a member of the organization with whatever rights he might have as such. It is not to be conceived however that the charter was intended to create a privileged class or that the right of the corporation to amend its laws was less in his case than in that of one joining after 1894. As to later members we can have no doubt, notwithstanding the difference of opinion in state courts, that the right to amend extends to a change in the rates to be paid. Persons who join institutions of this sort are not dealing at arm's length with a stranger whose mode of providing for payment does not concern them, but only his promise to pay. They are joining a club the members of which have to pay any benefit that any member can receive. The corporation is simply the machine for collection and distribution. Its charter expressly provides by § 5 that it 'shall not engage in any business for gain; the purposes of said corporation being fraternal and benevolent.' It is manifest therefore that it would be a perversion of its purposes, if through some ambiguity of phrase the necessary source of benefits were closed in favor of certain members while their right to insist upon payment remained. The essence of the arrangement was that the members took the risk of events, and if the assessments levied at a certain time were insufficient to pay a benefit of a certain amount, whether from diminution of members or any other cause, either they must pay more or the beneficiary take less.

The same conditions applied to the original corporation, and the plaintiff testifies that he understood them. He says in so many words that he knew that the only source of revenue to meet his and other policies was from assessments of the insured, and that if, after a proper rate was fixed for a membership of five thousand, the membership fell to two thousand, the rate would have to be increased if the obligations were to be met. The statute and the words of the law of the company under which the plaintiff entered the Fourth Class should be construed in the light of these considerations. In determining his rights it is important to bear in mind that there was no specific promise to him like the promise to pay in the certificate but that his whole reliance is upon a law of the corporation, and that he had notice that all laws of the corporation were liable to be repealed. The only language in the certificate bearing on the matter pointed to possible changes, one condition being the payment of all monthly payments 'as required.' It was obvious and understood that to pay a benefit an increase in the assessment might be necessary. In our opinion the present charter like the first must be construed to authorize such an increase and the clause in the law of 1884 relied upon—that the payments should continue the same so long as the membership continued—was not a contract but was a regulation subject to the possibility inherent in the case. More than ambiguous words in an amendable law would be needed to establish a departure from the ground on which the relation of the parties obviously stood and to create a privilege that attacked the corporation in its very life. Compare the language in *Royal Arcanum* v. *Green*, 237 U. S. 531, 542, and the same case below, *sub. nom Reynolds* v. *Royal Arcanum*, 192 Massachusetts, 150, 157.

The persons incorporated in 1894 were described as officers and members of the Supreme Lodge then existing, that is, of a voluntary association, and it was the rights

and duties of that association that the defendant assumed, if we are to take the words in their literal sense. We spend no time upon the inquiry what those rights and duties were, because, as we have said, we assume that the plaintiff acquired a standing in the new company. But in the second stage as in the first the law establishing the Fourth Class had received a practical construction as being open to change, by the continued rating of the plaintiff at 48 instead of 42 as at first, and although the plaintiff says in a general way that he protested, he paid, and he had notice of what the earlier companies asserted to be their rights when he came into the new one that asserted the same and put them in force as against him. We mention these details to show that the plaintiff suffers no injustice and meets with no surprise when we state our opinion that the assumption under § 3 of the new charter of a relation with the plaintiff that originally arose under a law of the old corporation was not the assumption of a contract for immutable assessments, and decide that the power to amend given by § 4 included the power to raise the rates to such point as was necessary for the corporation to go on.

The plaintiff's certificate did not absolutely promise to pay $3,000 if the plaintiff had performed the conditions. It contained a proviso by which if one monthly payment by members holding an equal amount of endowment should not be sufficient to pay the sum, the amount of the monthly payment should be the benefit received. If all other Fourth Class certificates were in similar form it may be asked whether it was reasonable to increase the assessments rather than to allow the payments to abate. The answer in addition to what we already have said is that unless the corporation continued to make substantial payments at death it could not go on. On the evidence, at the end of 1910 the plaintiff's certificate was worth very little or nothing. It well may have been

thought better to rehabilitate the class rather than to allow their certificates to become waste paper. At all events that was the prevailing view in the republic to which the plaintiff belonged, and as we have said the charter authorized it to be enforced. It is unnecessary to discuss the options that were offered in the alternative, but it is proper to remember that for many years the plaintiff has been insured, and although by what he is not likely to regard as bad fortune his beneficiary has not profited by it, she would have if he had died. As he happily has lived, he has to bear the burdens incident to the nature of the enterprise into which he went open eyed.

*Judgment reversed.*