WILLIAM E. DELANEY & others *vs.* GRAND LODGE ANCIENT
ORDER OF UNITED WORKMEN OF MASSACHUSETTS.

Suffolk.    March 16, 1923. — April 16, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Fraternal Beneficiary Corporation*, Amendment to by-laws. *Corporation. In-surance.*

A fraternal beneficiary corporation, incorporated in 1883 under the laws of this
Commonwealth and since then engaged with its members in the fraternal in-surance business under the lodge system with a representative form of govern-ment in accordance with the organization and undertakings described in G. L.
c. 176, issued to its members, upon applications for membership containing
agreements to make punctual payment of all dues and assessments for which
members might become liable and to conform in every respect to the laws, rules
and usages of the order "now in force or which may hereafter be adopted,"
certificates of membership containing a promise by the defendant to pay a
specified amount, usually either $1,000 or $2,000, upon the express condition
that the certificate holder while a member of the order should comply with all
its laws, rules and requirements.   No certificate contained any stipulation
limiting the amount of the assessment that might be levied upon a member.
Owing to the financial exigencies of the corporation and to the fact, demon-strated by experience, that the assessments were inadequate, assessments,
originally limited by the by-laws to $1 for each member upon each death of
a member, from time to time were increased by successive amendments to the
by-laws and in 1913 a new by-law was adopted increasing the rates to a speci-fied monthly amount based on the age of each member at that time, which was
expected, and which was stated, in a notice sent by the defendant in that year
to each member, to remain the same throughout life.   Increases likewise were
effected in 1917 and 1918 as "war measures."   In 1922, after a reference of the
matter to a special committee and the employment of actuaries who made
a careful study and investigation of the situation, the by-laws by vote of the
members of the defendant were again amended providing several options for
the members beginning on January 1, 1923, among them options (1) for monthly
payments in advance of a specified amount determined by a so called "Table
of Whole Life Monthly Rates" based on age at birthday nearest to January 1,
1923, whereby the amount of the original certificate would be maintained and
payment thereof assured according to its terms; (2) for continued payment of
the pre-existing rate of assessment with reduction in the amount of benefit to
be paid; (3) for paid-up certificates; (4) for twenty payment life certificates;
(5) for extended protection without payment of mortuary assessments, or
(6) for cash surrender value certificates.   The assessments established by the
"Table of Whole Life Monthly Rates" of the 1922 by-laws were in excess of
those hitherto charged and for the members advanced in years were very much
greater.   Upon a bill in equity by five members of advanced years to enjoin
the enforcement of the by-law, it was *held*, that

(1) It was plain that by the amendment of 1922 the right to the payment

of the full amount specified in each original certificate was fully preserved to each member who chose to pay the annual assessment required by the amendment to accomplish that result;

(2) There was no compulsion provided for in the amendment of 1922, but it was left wholly to the deliberate preference of the certificate holder whether he would accept any of the options which would reduce the amount to be paid under the terms of the original certificate;

(3) The rights of the certificate holders were in no way affected by a letter sent to the members explaining the 1922 by-laws and requesting the return of old certificates;

(4) The "Table of Whole Life Monthly Rates" was not unreasonable or arbitrary;

(5) The membership in the defendant and the certificates were subject to payment of assessments and to changes in the amount by amendments to the by-laws; and the change made was not a repudiation, but was in accordance with the terms of the contract between the members and the defendant;

(6) The holder of such a certificate in an association having such by-laws is bound by any rational alteration honestly made in the rates to be assessed, whatever the extent of such alteration;

(7) No contract right of any of the plaintiffs was violated by the by-laws of 1922;

(8) The plaintiffs were given no greater rights by a letter of 1913 from the defendant to the plaintiffs and all other members in explanation of the increased assessment established in the by-laws of that year, to the effect that the new rate would remain the same and unchanged during life, such letter being merely the expression of a hope and expectation; and public statements of officers of the defendant at that time, in substance that the rates then adopted were adequate to carry members to ninety years of age and that existing members would never have to pay higher rates, stood upon the same footing; if it be assumed, without so deciding, that evidence was competent that the plaintiffs relied upon these statements in continuing payments after 1913, and that otherwise they would have then ceased to be members, no ground for relief was stated;

(9) The power to make the 1922 by-laws was within the authority conferred by G. L. c. 176;

(10) There was no repudiation by the defendant of its contract with the plaintiffs;

(11) It was plain that there was a genuine effort on the part of the defendant to place and maintain itself on a sound financial basis.

There is now no statutory prohibition against payment by fraternal beneficiary corporations for the securing of new members, so long as the requirements of G. L. c. 176, § 14, are met.

Members of a fraternal beneficiary corporation cannot maintain a suit in equity seeking relief against the corporation for exceeding its corporate powers and asking for the appointment of a receiver, for winding up its corporate activities and for cognate matters, but relief of that nature must be sought through the methods provided by G. L. c. 176, § 36.

G. L. c. 176, § 36, is constitutional.

BILL IN EQUITY against the Grand Lodge of the Ancient Order of United Workmen of Massachusetts, filed in the Supreme

Judicial Court on January 27, 1923, and afterwards amended, by five members of, and holders in good standing of beneficiary certificates of the defendant, three of whom were of the age of sixty years, one of sixty-five years and one of seventy years, who alleged that they brought the suit "for themselves and on behalf of such other creditors of or persons financially interested in the defendant corporation who" might join therein.

The prayers of the bill were that the defendant be enjoined from cancelling or altering its several contracts of insurance with the several plaintiffs or with the other holders of insurance certificates who have paid and who continue to pay the premiums as established under contract with the defendant corporation in the year 1913; from issuing any cash surrender value or paid-up life insurance policies or certificates, and from reducing the principal amount payable under its outstanding certificates held by the plaintiffs, as well as by other certificate holders, which it had contracted to pay to their beneficiaries upon their death, or from otherwise avoiding or cancelling its contracts of insurance with them theretofore made and in force; from transferring, concealing, expending, encumbering, removing from this Commonwealth, or parting with the possession of or title to any of the moneys, stocks, bonds, securities, properties, or assets of the defendant corporation, and from incurring or contracting any further indebtedness or otherwise depleting the assets of the defendant corporation; also for the appointment of a receiver, a determination of the several amounts paid into the defendant corporation as premiums upon the life insurance by the several certificate holders and of the indebtedness of the defendant corporation to each of said certificate holders and to each and every creditor of said corporation, and that the assets of the defendant be distributed ratably among the several certificate holders and other creditors in such way and manner as might be just and equitable; or, in the alternative, if it should appear that the defendant might properly continue to do an insurance business, that the rights and obligations of the several plaintiffs and of the defendant with respect to contracts of insurance upon the lives of the several plaintiffs might be determined and that such orders and decrees might be made in the premises as would preserve the right of the plaintiffs, permit them to pay such premiums as may be lawful

and proper, and to continue their insurance in force under such conditions and restrictions as will best prevent loss. And, further in the alternative, "that the by-laws adopted by the defendant in October, 1922, be decreed void and of no effect and that the defendant be enjoined from enforcing or attempting to enforce the provisions of said by-laws or any of them against the plaintiffs."

The suit was heard by *Pierce*, J., who filed a statement of facts found by him, which closed with a finding that the plaintiffs already had placed before the insurance commissioner of Massachusetts the facts set forth in his findings, and also the charges and complaints contained in the bill in this case, and that the insurance commissioner had refused to take any action in the premises. Other material facts are described in the opinion. By order of the single justice, the suit was reserved for determination by the full court.

*C. W. Rowley*, for the plaintiffs.

*M. Hayes & C. H. Waterman*, for the defendant.

RUGG, C. J. This is a suit in equity. The plaintiffs, who bring this suit in behalf of themselves and others having similar interests, are members of the defendant and holders in good standing of beneficiary certificates issued by the defendant many years ago. They seek to restrain the defendant from putting into operation certain recently adopted amendments to its by-laws, and pray for the appointment of a receiver and for general relief.

The defendant is a fraternal benefit society incorporated in 1883 under the laws of this Commonwealth and since then engaged with its members in the fraternal insurance business under the lodge system with a representative form of government in accordance with the organization and undertakings described now in G. L. c. 176.

The case comes to this court for determination by reservation upon the bill and answer and findings of fact. The essential facts are that the defendant corporation is formed for the purpose of uniting in social and fraternal association all acceptable men, including also women since 1917, of sound bodily health and good moral character, promoting benevolence, charity and morality, aiding members disabled by accident or sickness, their families and dependents, and assisting widows, orphans, relatives and other dependents of deceased members. All applications for

membership have contained the agreement to make punctual payment of all dues and assessments for which a member may become liable and to conform in every respect to the laws, rules and usages of the order "now in force or which may hereafter be adopted." The certificates of membership, while differing somewhat in form before and since 1904, contain a promise by the defendant to pay a specified amount, usually either $1,000 or $2,000, upon the express condition that the certificate holder while a member of the order shall comply with all its laws, rules and requirements. The defendant adopted by-laws, which have been changed from time to time and which always have contained appropriate provisions for alteration and amendment at any legal meeting of the corporation by a majority of the members. No certificate contains any stipulation limiting the amount of the assessment which may be levied upon the member. The assessment originally was by by-law limited to $1 for each member upon each death of a member. In 1901 the by-law was changed, increasing the amount of the assessment so as to provide for a beneficiary fund and for classified assessments based upon the ages of members, the assessment increasing with every advance of five years in age, until fifty, when the maximum was reached. Experience demonstrated that assessments thus required were insufficient to pay the accruing death claims, and in 1913 it was apparent that the defendant could not continue business without greatly increasing its assessments. A new by-law then was adopted increasing the rates to a specified monthly amount based on the age of each member at that time, which was expected, and which was stated in a notice sent by the defendant in that year to each member, to remain the same throughout life. In 1917 these rates were increased by ten per cent as a "war measure" and in 1918 this increase was made permanent, all by appropriate by-laws. Although the defendant always has continued and is still "legally solvent" under G. L. c. 176, § 39, its percentage of solvency shown by the valuation required by the statutes slowly but steadily decreased from seventy-two and seven tenths per cent in 1913 to fifty-seven and thirty-two hundredths per cent in 1921. The financial results of the operations of the defendant subsequent to the adoption of the 1913 amendment were a surplus for each year up to and including 1916, but a deficit for each succeeding

year, although its cash reserves on December 31, 1922, amounted to approximately $600,000. The total membership of the order is now about twenty-two thousand. Since its organization it has collected and disbursed for payment of death claims something in excess of $28,000,000. In 1922 assessments received by it were about $930,000, and its death benefits paid or accrued about $986,000. At the annual convention of the order in 1922 a report was submitted recommending the adoption of a new schedule of assessments. That plan was not adopted, but a special committee was appointed to prepare another plan to be submitted at a session of the Grand Lodge to be held in October, 1922. Actuaries were employed and a report presented apparently based upon careful study and investigation. The plan presented by the special committee was adopted and the by-laws amended so as to carry out the recommendations of the actuaries and the committee. These by-laws, with respect to every member of the order, provided alternative options beginning with January 1, 1923, (1) for monthly payments in advance of a specified amount determined by a so called "Table of Whole Life Monthly Rates" based on age at birthday nearest to January 1, 1923, whereby the amount of the original certificate shall be maintained and payment thereof assured according to its terms; (2) for continued payment of the pre-existing rate of assessment with reduction in the amount of benefit to be paid; (3) for paid-up certificates; (4) for twenty payment life certificates; (5) for extended protection without payment of mortuary assessments, or (6) for cash surrender value certificates. There may be other options and benefits, but they need not be set forth. Since November, 1922, the defendant has entered into contracts with new members and with some old members and is about to issue certificates pursuant thereto, all in accordance with the new or 1922 by-laws. The assessments established by the "Table of Whole Life Monthly Rates" of the 1922 by-laws are in excess of those hitherto charged and for the members advanced in years are very much greater.

While the new by-law makes provision for the payment of less than the amounts of the original certificates and affords several options modifying the payment of that amount, yet it is plain that the right to the payment of the full amount specified in each original certificate is fully preserved to each member who chooses

to pay the annual assessment required to accomplish that result. It is left wholly to the deliberate preference of the certificate holder whether he will accept any of the options which will reduce the amount to be paid under the terms of the original certificate. There is no compulsion. It is entirely a matter of election with the member. Each member still has assurance that there will be paid the full amount named in his certificate provided he continues to pay the assessments necessary to that end under the 1922 by-law.

The letter sent to the members in explanation of the 1922 by-law and the various options thereby afforded could not and did not purport to affect its terms. It clearly and truthfully states the new mortuary rate requisite for the continuance of each $1,000 of insurance afforded by the original certificate. While the return of the old certificate is requested, this is not stated to be a condition of further insurance. The rights of the certificate holders were in no way affected by the letter.

Manifestly we cannot pronounce the "Table of Whole Life Monthly Rates" unreasonable or arbitrary. The amounts may seem large, but they have been declared necessary and reasonable by the actuaries employed, by the special committee and by the order itself. No evidence is set forth to show that they are not essential in order justly to produce the requisite amounts to meet the actual cost of the insurance.

It seems plain on the record that this corporation, having in charge pecuniary interests of great importance to thousands of families, had been conducting its business upon unsound financial and insurance principles which if continued without change would lead to disaster. This defendant is a mutual corporation organized for the general benefit of all its members and not conducted for its private gain and business profit. Each of the plaintiffs agreed, as a condition of becoming a member of the defendant corporation, that he would be bound by and comply with all the by-laws of the defendant then in force or thereafter to be adopted. The beneficiary certificate, on which each rests his rights, contained the promise to pay the specified sum upon the express condition that the certificate holder should in every particular while a member conform to all the by-laws and requirements of the order. All the certificates are silent as to the assessments to be paid. The

amount of the assessments was fixed in the by-laws. The by-laws at all times during the membership of any of the plaintiffs in the order have contained provision for amendment. See now G. L. c. 176, § 20, embodying St. 1911, c. 628, § 8. Such amendment could be made only by vote of the certificate holders or their representatives. The plaintiffs had as much voice in such matters as any other equal number of their fellow certificate holders. A change made in the by-laws concerning the amount of the assessments to be collected was not a repudiation but in accordance with the terms of the contract. The holder of such a certificate in an association having similar by-laws is bound by any subsequent rational alteration honestly made in the rates to be assessed, whatever the extent of such alteration. To quote the words of Mr. Justice Holmes in *Knights of Pythias* v. *Mims*, 241 U. S. 574, 579: "Persons who join institutions of this sort are not dealing at arm's length with a stranger whose mode of providing for payment does not concern them, but only his promise to pay. They are joining a club the members of which have to pay any benefit that any member can receive. The corporation is simply the machine for collection and distribution. . . . The essence of the arrangement was that the members took the risk of events . . ."

No contract right of any of the plaintiffs was violated by the by-law here assailed. The plaintiffs all agreed to be bound by any by-law subsequently adopted by the order. The letter of 1913 from the defendant to the plaintiffs and all other members in explanation of the increased assessment established in the by-law of that year, to the effect that the new rate would remain the same and unchanged during life, was merely the expression of a hope and expectation. The public statements of officers of the defendant at that time, in substance that the rates then adopted were adequate to carry members to ninety years of age and that existing members would never have to pay higher rates, stand upon the same footing. If it be assumed, without so deciding, that evidence was competent that the plaintiffs relied upon these statements in continuing payments after 1913, and that otherwise they would have then ceased to be members, no ground for relief is stated. The vital factor of the defendant's method of business was co-operative and mutual. It involved as an essential element the right to change its by-laws as to rates of assess-

ment. The,plaintiffs had then long been members and as persons of ordinary intelligence must have known the main features of the organization to which they belonged. "Those who were misled were misled only by collateral expressions of prophecy, while the defendant's promise in the contract was conditioned" in express or implied terms to the effect that rates of assessment were not stipulated but were left to be fixed from time to time as the exigencies of the business might require. *Fogg* v. *United Order of the Golden Lion*, 156 Mass. 431, 433. The order could not thus be bound not to exercise the power of amendment of by-laws if changed conditions or new experiences demanded such amendment for the welfare of the order.

Objections to other features of the 1922 by-laws, such as paid-up certificates, term certificates, extended protection and cash surrender value, have not been argued. Therefore we do not examine them in detail. Considerable flexibility in these matters is afforded by G. L. c. 176, §§ 16, 19. The plaintiffs fail to show any individual harm in these particulars.

The power to make the 1922 by-laws is within the authority conferred by G. L. c. 176. See especially §§ 20, 32, 40.

The case at bar is governed in every essential particular by *Messer* v. *Ancient Order of United Workmen*, 180 Mass. 321, where the same order was party defendant. It there was said by Chief Justice Knowlton, at page 324: "The certificate holders are members of a fraternal beneficiary association which may, from time to time, amend its by-laws and change its methods of doing business as the members determine for the common good. By the express terms of the certificates, the members are to be bound by changes in the by-laws that may be made from time to time. The Legislature might change the statutes affecting such companies, and the companies might, in like manner, change the by-laws under this power expressly reserved. . . . This change in the by-laws is not void as an abuse of the power to make changes. . . . It may be conceded that some amendments might be so foreign to the general scheme and purpose of the organization and so contradictory to its fundamental law and the contracts made under it, as not to be within the power of amendment referred to. But this is not true of an amendment which merely changes forms and methods, while the substance of the general

plan and purpose of the organization is preserved." The case is fully covered also by *Pain* v. *Société St. Jean Baptiste*, 172 Mass. 319, and *Reynolds* v. *Royal Arcanum*, 192 Mass. 150. To the same effect are *Royal Arcanum* v. *Green*, 237 U. S. 531, *Knights of Pythias* v. *Mims*, 241 U. S. 574, *Knights of Pythias* v. *Smyth*, 245 U. S. 594, *McClement* v. *Independent Order of Foresters*, 222 N. Y. 470, 478, *Funk* v. *Stevens*, 102 Neb. 681, *Thomas* v. *Knights of Maccabees of the World*, 85 Wash. 665.

The apparent hardship upon such of the plaintiffs as are somewhat advanced in years is disposed of by what is said in the Reynolds case, 192 Mass. 150, at pages 158, 159: These members "have had the benefit of insurance for themselves and their families for many years, at very much less than the cost of their insurance to the corporation. They have had the good fortune to survive, and therefore their contracts have brought them no money, but all the time they have had the stipulated security against the risk of death. If now they are called upon to pay for future insurance no more than its cost to the corporation they ought not to think it unjust." To the same effect is *Knights of Pythias* v. *Mims*, 241 U. S. at page 582.

No discussion is required to demonstrate that there is nothing at variance with the conclusion here reached in *Newhall* v. *American Legion of Honor*, 181 Mass. 111, and *Attorney General* v. *American Legion of Honor*, 196 Mass. 151. There has been no repudiation of contracts by the defendant.

It is plain, too, that there is a genuine effort on the part of the defendant to place and maintain itself on a sound financial basis. The report of the actuaries furnishes ground for belief that the new by-laws of the defendant in operation will accomplish that result. The case at bar is plainly distinguishable from *Fogg* v. *United Order of the Golden Lion*, 156 Mass. 431.

No ground for relief to the plaintiffs is set forth respecting the payment to members for securing new members of a part of the first year's premium paid by such new member. There is now no prohibition in the statute against payment by corporations such as the defendant for securing new members. The provisions forbidding such payments in earlier acts, see R. L. c. 119, § 16, and marginal references, were modified by St. 1910, c. 296, and disappeared altogether in St. 1911, c. 628, and G. L. c. 176. No

violation of G. L. c. 176, § 14, is disclosed in the 1922 by-laws or in the conduct of the defendant. The plaintiffs do not prove that the particular form of action proposed by the officers of the defendant is harmful to their legal rights.

Every aspect of the case which can rightly be construed to affect the contract rights of the plaintiffs has been considered.

So far as the plaintiffs seek relief against the corporation for exceeding its corporate powers, and ask for the appointment of a receiver, for winding up its corporate activities and for cognate matters, they are precluded from invoking the aid of the court by G. L. c. 176, § 36. It there is provided: "The commissioner or any person designated by him may examine the affairs of any domestic society. . . . Whenever after examination the commissioner is satisfied that any domestic society has failed to comply with any provision of this chapter, or is exceeding its powers, or is not carrying out its contracts in good faith, . . . the commissioner may present the facts relating thereto to the Attorney General, who shall, if he deems the circumstances warrant, begin a quo warranto proceeding in the Supreme Judicial Court, and the court shall thereupon notify the officers of the society of a hearing. . . . No such proceeding shall be begun by the Attorney General until after notice has been duly served on the chief executive officers of the society by the commissioner and a reasonable opportunity given to it, on a date to be named in the notice, to show cause why such proceedings should not be begun, nor shall such proceedings be entertained unless brought by the Attorney General." This is but the re-enactment of earlier statutes in unmistakable words prohibiting proceedings for dissolution or the appointment of a receiver unless instituted by the Attorney General. See St. 1911, c. 628, § 25. The present statute should be construed according to the familiar rule that verbal changes in the revision of a statute do not alter its meaning and are treated as a continuation of the previous law. *Main* v. *County of Plymouth,* 223 Mass. 66, 69. *Derinza's Case,* 229 Mass. 435, 442. This branch of the present proceeding is within the scope of this statute. It doubtless was designed to prevent hostile attacks upon an institution in which large numbers of persons are interested, except through the instrumentality of a public officer, and to render impossible the harm which might come to

a solvent and worthy beneficiary corporation insuring great numbers of people through ill-considered proceedings. The business of insurance is invested with general public interest and is subject to State regulation within rational bounds. Any act of the Legislature directed to this end within reasonable limits will be upheld. Said Chief Justice Knowlton in *New York Life Ins. Co.* v. *Hardison*, 199 Mass. 190, 198: "The Legislature has large powers for the regulation of the business of insurance. It may act under the police power for the protection of the public, or it may act as the creator and controller of corporations, domestic and foreign, which are subject to this power." The effect of the present statute is not to cut off substantial rights, but to provide orderly methods of redressing genuine grievances. The constitutionality of the statute is upheld in principle by *Lorando* v. *Gethro*, 228 Mass. 181, and cases there collected; *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389; *La Tourette* v. *McMaster*, 248 U. S. 465, 467.

Statutes of similar tenor have been declared not to violate constitutional rights and guaranties in *Swan* v. *Mutual Reserve Fund Life Association*, 155 N. Y. 9, 22, 23; *Greeff* v. *Equitable Life Assurance Society*, 160 N. Y. 19, 30; *Ward* v. *Farwell*, 97 Ill. 593, 609; *People* v. *Superior Court*, 100 Cal. 105; *Koch* v. *Missouri-Lincoln Trust Co.* 181 S. W. Rep. 44. See *Royal Arcanum* v. *Hobart*, 244 Fed. Rep. 385, 389, 390; 157 C. C. A. 11.

It is not necessary to determine what averments and proof may be sufficient to warrant intervention by the court against unwarranted refusal by the commissioner or the Attorney General to act. It is enough to say that the present case utterly fails in that respect.

*Petition dismissed.*