## SOVEREIGN CAMP, W. O. W., v. WIRTZ. (No. 8343.)

(Court of Civil Appeals of Texas. Galveston. May 10, 1923. Rehearing Denied Oct. 4, 1923.)

1. **Courts ⟨⟩⟩95(1)—Decision of court of state of incorporation regarding effect of by-law of beneficial insurance society binding on courts of this state.**

Where a decision of the Supreme Court of the state of incorporation of defendant insurance society held that the society had a right, under a by-law, to place a lien on the certificate of a member who elected to pay the old rather than the increased rate provided by such by-law, such decision is binding on the courts of this state.

2. **Courts ⟨⟩⟩95(1)—Full faith and credit given to decision of court of state of incorporation of insurance society as to validity of by-law.**

Where Nebraska was the state of incorporation of defendant insurance society, a deci-

sion of the Nebraska court that a by-law was ultra vires, must be given effect by the courts of this state under the full faith and credit clause of the federal Constitution.

**3. Insurance &#9758;755(1)—Incontestable clause not applicable where only lien charge claimed, and payment of policy not contested.**

Where, in a suit on a beneficiary certificate, defendant asserted a lien charge on the amount of the certificate, an incontestable clause had no application, since defendant was not contesting the payment of the policy, but merely disputing the correctness of the amount claimed.

**4. Insurance &#9758;724(1)—Beneficial society not estopped to claim by-law ultra vires. .**

Where defendant issued a beneficiary certificate pursuant to a by-law, providing that payment of dues should cease after 20 years, when it was without power to write certificates containing such provision, defendant was not estopped to claim as ultra vires the provision and by-law in question.

**5. Insurance &#9758;791(1)—Receipt of old rate after increased rate went into effect held not waiver of right to pay amount of certificate as reduced by lien to effect increase of rate.**

Where a beneficiary society by-law increased the rate of assessment, and, in default by a member of payment of the increased rate automatically placed a lien upon the certificate of such member, thereby reducing the amount of insurance, the society did not waive its right to pay the reduced rather than the full amount of the certificate by continuing to accept payments from a member at the old rates after the by-law went into effect.

**6. Insurance &#9758;719(3)—Member agreeing to pay all dues and assessments cannot object to subsequent reasonable increases.**

A member of a beneficiary society, who agreed to pay all dues and assessments that might be levied could not object to subsequent reasonable increases in rates made in good faith, nor was the society estopped to demand them because his certificate stipulated a lower rate.

Appeal from District Court, Colorado County; C. K. Quin, Judge.

Action by Mrs. J. G. Wirtz against the Sovereign Camp, Woodmen of the World. From a judgment for plaintiff, defendant appeals. Reformed and affirmed.

Wolters, Storey, Blanchard & Battaile, of Houston, for appellant.

Wurzbach, Wirtz & Weinert, of Seguin, for appellee.

GRAVES, J. This suit was instituted by appellee, Mrs. J. G. Wirtz, as plaintiff below, against appellant, Sovereign Camp of the Woodmen of the World, as defendant below, by petition filed August 19, 1921. Plaintiff alleged that defendant had executed and delivered to J. G. Wirtz its beneficiary certificate, in the nature of a policy of insurance on

his life, payable at his death to plaintiff, his wife, as beneficiary, in the sum of $2,000, and the additional sum of $100, for the purpose of erecting a monument at the grave of the insured. That the policy was issued March 23, 1895, and delivered April 5, 1895, and thereafter the insured remained a member in good standing of the defendant society, paying all dues and assessments legally levied and assessed against him and his said policy, and abiding by all the by-laws, rules, and regulations of the company legally binding on him, until the day of his death, which occurred on the 7th day of January, 1921. That due proofs of death were made and submitted to defendant, demand for payment of the amount of the policy made on the defendant, and refusal to pay by defendant. The beneficiary certificate made the basis of the suit is set out in full in the ·petition, and it is alleged that it bore the indorsement, "payments to cease after 20 years," which had reference to a by-law of defendant then in force, which by-law provided, in substance, that life membership certificates should issue to all members entering the order over 43 years of age (the age of insured when entering) when the certificate had attained the age of 20 years, and ·that thereafter the life member should not be liable for further dues and assessments on his policy; that by virtue of such facts the policy in question had become a paid-up policy in April, 1915. ·

The foregoing is the general statement appellee makes in her brief of her declaration on the policy she sued upon; to it may be added her specific averments as to the maturity of the policy for the amounts specified on its face, $2,000 and $100, at the expiration of the 20 years from its date, that is, on April 5, 1915, as follows:

"That the indorsement on said policy, 'payments to cease after 20 years' was made thereon at the time of the execution and delivery of the policy, and is a part thereof; that said indorsement has reference to, and is intended to make a part of said policy the following provisions of the by-laws of the defendant then in force, which by-law is substantially as follows:

"Life Membership Certificates.

"Section 82. Life membership certificates shall be issued by the Sovereign Camp to all members of the Woodmen of the World under the following conditions: * * * of all members entering the order over 43 years of age, when the certificate has attained the age of 20 years; and that after the said life membership certificate has been issued the life member shall not be liable for camp. dues, assessments or general fund dues; that the proper officers of the Sovereign Camp shall issue, quarterly, assessments calls upon all members of the Woodmen of the World, regardless of jurisdiction or nation, for a sufficient amount to pay all death claims accruing during the previous three months, for said life members who have

died during said time, under the provision, and that any life member visiting a camp shall be greeted with the honors of the order and shall be seated at the right of the counsel commander, and shall also be entitled to wear a life membership badge, to be designed and prescribed by the Sovereign Camp. * * *

"That the indorsement 'Rate 1.30' on said policy had reference to the monthly assessment rate to be paid by the insured, said rate being fixed by the then existing by-laws of the defendant at $1.30 for members of insured's then age. * * *

"That said insured thereupon at the expiration of 20 years, or on April 5, 1915, became entitled to have the life certificate aforesaid issued and delivered to him, and was not liable for any further dues, premiums, or assessments, and upon the death of said insured at any time thereafter, and without payment of any further dues or assessments by the insured, plaintiff became entitled to demand, collect, and receive, and defendant became liable to pay to plaintiff the sums of money in said certificate specified."

There were further allegations to the effect that the defendant had violated its contract by refusing either to deliver to the insured, while living, the life certificate so provided for, or to recognize the obligation it imposed after his death, but demanded the payment of further dues and assessments, and—

"that the insured, without waiving his right to insist on said clause and provisions of said policy and by-laws, but still insisting on the same, and under protest, continued to pay such assessments and dues as were legally levied and assessed against him, and continued a member in good standing of said order up to the time of his death, as aforesaid."

In contesting the right of the appellee to recover the face amount of the certificate sued upon, the appellant alleged:

"(a) That the contract existing by and between the said J. G. Wirtz and this defendant, provided as herein alleged that the said J. G. Wirtz would pay all dues and assessments which might be demanded of him, and would obey the provisions of the constitution, laws and by-laws of the defendant society, then in force, or which might be thereafter adopted.

"(b) That at the time the said J. G. Wirtz became a member of defendant society, he was required to pay to the society $1.45 each month, and to pay such extra assessments which might be required of him, and also pay such increased rate of assessments as might be required of him.

"The Sovereign Camp, the legislative body of the defendant society, met in 1899, and authorized the executive council to make an increase in the rates upon all members of the society, and in July, 1899, said executive council did pass a law, and made it a part of the constitution and laws, raising and increasing the rates upon the certificate of the said J. G. Wirtz, and all members similarly situated, 20 cents per month, and provided that said sum should be paid to the emergency fund. Said law became effective August 1, 1899, and thereafter the said J. G. Wirtz was required to pay a regular assessment of $1.65 per month, and in addition thereto to pay such extra assessments as might be levied.

"(c) In September, 1901, the rates were again raised and increased to members similarly situated with the said J. G. Wirtz, 50 cents per month, thereby making his rate $2.15 per month, together with such extra or increased assessments as might be required.

"(d) That the Sovereign Camp, in September, 1916, raised and increased the rate of J. G. Wirtz and all members similarly situated 60 cents per month, but provided that the member might continue to pay the rate theretofore paid by him, and have the same charged against his certificate as a lien, and the rate fixed and charged against the said J. G. Wirtz was $2.75 per month.

"That the said J. G. Wirtz did not pay this extra 60 cents per month, and that same became a fixed charge against his certificate for the month of September, 1915, and all subsequent months up to and including January, 1921, making a total of $38.40.

"(e) The Sovereign Camp in 1917 raised and increased the rates upon all members 10 cents per month per member. Said law became effective October 1, 1917, and all members were required to pay this 10 cents, together with at least the amount which they had paid prior to September 1, 1915, and the said J. G. Wirtz did pay the $2.25 per month until the last installment, which was paid by him, was December, 1920, and left unpaid the balance of the annual assessment for his certificate year for the months of January, February, and March at $2.85 each, amounting to $8.55.

"(f) That in 1919, the Sovereign Camp met in regular session and passed a law increasing and raising the rate of assessment upon all members of the defendant society as of their attained age, as set forth in section 60 of the constitution and laws. Said laws provided that if the member did not pay the rate as fixed for him at his attained age in order to obtain all the promised benefits contained in his certificate, and if he elected to continue to pay the rate theretofore paid by him, that he thereby elected a lien charge against his certificate as provided in said section 60 of the laws of defendant, and as provided in the plan of apportionment and adjustment, copy of which is attached to this answer and made a part thereof; that said J. G. Wirtz elected to continue to pay the rate theretofore paid by him, and thereby elected a lien charge on his certificate of $440. upon which he was required to pay interest at the rate of 4 per cent. per annum, but if the interest should not be paid by him in lifetime, then it should be deducted at the rate of 5 per cent. per annum. That the said J. G. Wirtz did not pay the interest on the said lien charge, and therefore the interest became due and payable on said $440, at the rate of 5 per cent. per annum, amounting to the sum of $22; that the deduction from the maximum amount of the certificate is as follows:

Elected lien charge ............................. $440 00
Interest at 5 per cent. for one year...........　22 00
Balance of annual installment................　 8 55
Lien created by failure to pay 1915 assessment ...........................................　38 40
　　Total ....................................... $508 95
　　　　　　　　　　　　　　　　　　　　　　　　 2 85
　　　　　　　　　　　　　　　　　　　　　　　$506 10

Leaving a balance due to the beneficiary, plaintiff herein, of $1,491.05; that the defendant tendered to the plaintiff a sum in excess of the amount due, to wit, the sum of $1,493.72."

The provisions of the policy thus referred to as binding its recipient to pay all dues and assessments that might be made against him were these:

"This certificate is issued and accepted subject to all the conditions on the back hereof and named in the sovereign constitution and fundamental laws and by-laws of this fraternity, and liable to forfeiture if said sovereign shall not comply with said conditions, constitutions, fundamental laws, and such by-laws and rules as are or may be adopted by the Sovereign Camp.

"1. This certificate is issued in consideration of the recommendations and agreements made by the person named in this certificate in his application to become a member of this fraternity, and also in consideration of the payment made when adopted and in prescribed form, and his agréement to pay all assessments and dues that may be levied during the time he shall remain a member of the Woodmen of the World."

For further defense, appellant alleged, in substance, the following: That the "payments to cease" provision of the policy and the bylaws authorizing the same were ultra vires the defendant corporation; that it was a corporation chartered and doing business under and by virtue of the laws of the state of Nebraska, with a permit to do business in Texas, and that under the charter provisions it was without power to write policies of insurance containing provisions for paid-up policies or the issuance of life certificates; that no certificates were issued with such provision subsequent to the year 1897, and the by-law in question was afterwards repealed. In this connection it further pleaded as being determinative of the identical issues here involved the judgments in the cases of Fowler v. Sovereign Camp, W. O. W., 106 Neb. 192, 183 N. W. 550, and Trapp v. Sovereign Camp, W. O. W., 102 Neb. 562, 168 N. W. 191, and the proceedings in those two cases in the courts of Nebraska—wherein it was held by the Supreme Court of that state that such by-law and the provision of the certificates in reference thereto were ultra vires the defendant corporation—as res adjudicata of that question and binding on the court in this case under the "full faith and credit" clause (article 4, section 1) of the federal Constitution.

To these defensive matters the appellee, after demurrers and denials, replied that at the time of the insured's death section 81 of appellant's by-laws of 1919 was, in effect, providing that payment of a beneficiary certificate in force for five consecutive years immediately preceding the death of a member in good standing, as was the situation in this instance, could not be contested, except on the ground of intentional death and certain other

inapplicable conditions; that appellant was estopped to claim as ultra·vires the "payments to cease" clause, and the by-law authorizing the same, because of having held itself out as possessing that power, having induced insured to join, and for 20 years pay assessments under that belief, without notice to the contrary, and finally:

"That section 60 of the by-laws of 1919 was unreasonable, unfair, and confiscatory; that if defendant had the right to promulgate and make effective said section 60, and thereby to assess a lien against the policy in question, as alleged by defendant, then it waived said right, and is estopped to now assert or claim such lien, by reason of the fact that the insured denied such right as to him, and offered to pay his old rate of assessment with the understanding and on the consideration that such payment would keep the policy in force and effect for the full amount thereof, including monument benefit, and that defendant accepted such payments under said understanding and on such consideration."

The pleadings upon, both sides were voluminous, but what has been given, together with this summary of the controlling issues quoted from appellant's brief, is thought to furnish sufficient basis for the purposes of this opinion.

"(a) The appellee, the beneficiary under a fraternal beneficial certificate, sues the society, a.corporation, for the face amount of the certificate; namely, $2,000, and the further sum of $100 therein provided as a monument benefit, alleging the performance by the deceased member of all those conditions upon performance of which the payment of the aforesaid sums was conditional.

"(b) The appellant defends the suit·upon the ground that the certificate described above is charged with a lien, aggregating, with interest, the amount of $506.10, on account of unpaid assessments, and which lien was provided for in by-law adopted in 1919 by the association; that the payment of the $100 monument benefit was by act of the deceased member and the aforesaid by-law waived, leaving the net amount of $1,493.90 due the appellee on the certificate.

"(c) Appellee's answer to this is to the effect that the increase in rates for 1919 and the lien charge provided for in said by-law were unreasonable and void; that appellant had no right to fix the lien charge referred to in (b), and that it had waived its right, if any it had, to assert such lien.

"(d) Appellant pleads the general denial to all of appellee's cause of action, and, with respect to the unreasonableness of the increase in rates, pleads a decision of the Supreme Court of Nebraska, the state of the domicile of the defendant corporation as well as the state of its origin, that such rates were not unreasonable or arbitrary, but necessary to the perpetuation of the society and its solvency, as res adjudicata of this question, and binding upon the courts of Texas under the full faith and credit clause of the federal Constitution."

The trial was before the court without the intervention of a jury, and judgment was

rendered for plaintiff for the full amount of the policy and monument benefit, with 6 per cent. interest from the date payment should have been made after the making of proofs of death; hence this appeal.

The cause was tried below upon an agreed statement of facts in which it was stipulated that, if the lien claimed was chargeable against the certificate, the correct amount of it was the $506.10 pleaded by appellant; so that, if this sum should have been deducted from the face value of the certificate and the by-law of 1919 also had the effect of eliminating the $100 monument benefit, the $1,493.90 appellant offered to pay and tendered in its pleadings should have been the amount of the recovery. The single question the cause involves in this court, therefore, is whether or not appellant showed itself entitled to a deduction for this asserted lien under section 60 of the by-laws of 1919, carrying with it the extinguishment also of the $100 monument benefit.

[1] After a careful consideration of the matter, in the light of the facts appearing, we conclude that the precise question so presented has been foreclosed in appellant's favor by the Supreme Court of Nebraska, and that this court is bound by that determination. Nor do we think effective the matters set up by the appellee in avoidance of that adverse determination by the court of last resort of a sister state—it being also the domicile of appellant, and the source from which its rights and powers came. The essential facts as a basis for the claimed lien were shown by appellant, including proper proof of the proceedings in the Nebraska courts in the two cases it mainly relied upon, Trapp v. Sov. Camp, W. O. W., 102 Neb. 562, 168 N. W. 191, and Fowler v. Sov. Camp, W. O. W., 106 Neb. 192, 183 N. W. 550.

It cannot be doubted, we think, that those cases involved, among others not applicable, the identical issue here in question, that is, the validity of the increases in rates applied in this instance and of the 1919 by-law authorizing them. The Fowler Case was a direct proceeding in equity, brought by plaintiffs who had been members several years for themselves and "all other persons similarly situated and interested," to determine the validity of the appellant's rate adjustment of 1919, and to enjoin it from putting those rates and adjustments into effect; as against the same attacks made thereon by the appellee in this suit, the court held such increase and adjustments valid.

[2] In the Trapp Case the effort was to compel the society to issue a paid-up certificate under a policy issued in 1895, as was the one at bar, and so directly involved the validity of the "payments to cease in 20 years" clause appearing in this one; the court held that a by-law of appellant society authorizing a paid-up policy or certificate, and the provision of the policy resting upon it, were

254 S.W.—41

ultra vires and void. To the same effect is Haner v. Grand Lodge, etc., 102 Neb. 563, 168 N. W. 189.

We deem it unnecessary to go further into these Nebraska cases; the citation to them is enough. They were both decided long before this suit was filed. The same conclusion they announce seems to have been independently reached by the Springfield court of appeals of Missouri; Garretson v. Sov. Camp, W. O. W., 210 Mo. App. 539, 243 S. W. 257.

That these Nebraska holdings are binding upon us, we think is settled by the decisions of the United State Supreme Court; Sup. Council of Royal Arcanum v. Green, 237 U. S. 531, 35 Sup. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771.

In the Green Case that court held, as the syllabus correctly reflects:

"That a judgment rendered by a court of the state of incorporation holding an amendment to the constitution and by-laws of a fraternal and beneficiary corporation to be legal, amounted to a construction of the charter by the courts of the state which the courts of another state were bound to recognize under the full faith and credit clause of the federal Constitution. A fraternal and beneficiary society is, for the purpose of controversies as to assessments, the representative of all of its members; and a judgment of the state of incorporation as to the validity of an amendment to the Constitution and by-laws must be given effect by the courts of another state, even though not between the corporation and the same member."

In this connection, however, further attention is called to the fact that in this proceeding the appellee failed to introduce any proof in substantiation of her allegations that the increases in rates she attacked were unjust, unreasonable, confiscatory, and void. For that reason also it would seem that the claim for invalidity of section 60 of the 1919 by-laws is not sustained by the record here made.

[3-5] The contention of the appellee that this policy was incontestable under section 81 of the 1919 by-laws is untenable; that provision had no application, because the appellant was not contesting the payment of this policy, but merely disputing the correctness of the amount claimed thereon. Her claim for estoppel to plead ultra vires and waiver of the lien charge is likewise without merit; the proof shows that while the society continued to receive her insured's payments despite protests from him concerning their justness, it also placed the lien charge against his certificate; this it had the right to do, and the following disposition of that matter in the Garretson Case by the Missouri court is applicable:

"The plea of waiver is based upon the fact that after the 1919 laws of defendant went into effect January 1, 1920, insured continued to pay his old rate, and defendant continued to

receive the payments. There was no waiver in this. Defendant received the insured's payments, but it also placed the lien against his certificate. Under section 60 of defendant's laws of 1919 insured had the right to elect under division (a) or (b) as heretofore explained. If he failed to elect, then without any action on his part he was placed under division (c). He took no affirmative action; hence fell under division (c). There are none of the elements of waiver involved."

[6] Mr. Wirtz agreed in originally accepting the certificate, as the previously quoted provisions from it have shown, to pay all dues and assessments that might be levied while he remained a member; he was therefore in no position to object to subsequent reasonable increases in rates made in good faith, nor was the society estopped to demand them, because his policy stipulated his initial rate at only $1.30 per month. Sup. Lodge, etc., v. Kims, 241 U. S. 574, 36 Sup. Ct. 702, 60 L. Ed. 1179, L. R. A. 1916F, 919; Sup. Lodge, etc., v. Smyth, 245' U. S. 594, 38 Sup. Ct. 210, 62 L. Ed. 492; Garretson v. Sov. Camp, W. O. W., 210 Mo. App. 539, 243 S. W. at page 260, par. 1, and authorities there cited.

From the conclusions stated it follows that the appellee's recovery should have been limited to the $1,493.72 so tendered by appellant; the judgment for $2,100 has accordingly been reduced to $1,493.72, and, after being so reformed, has been affirmed.

Reformed and affirmed.